

FILED

NOV 16 2005

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF CHERYL MONTILEAUX (deceased); CHARLES T. MONTILEAUX SR.; NAOMI MONTILEAUX; CHARLES T. MONTILEAUX JR.; and MIRIAM MONTILEAUX, | ) ) ) ) ) ) ) | CIV. 05-5049 |
| Plaintiffs, | ) ) | MEMORANDUM OPINION AND ORDER |
| vs. | ) ) | |
| FARMERS STATE BANK IN WINNER, SOUTH DAKOTA, President James J. Jares and Employee Richard Nelson; NORTHERN TRUST CO. IN CHICAGO, ILLINOIS, President and Board of Directors; LASALLE NATIONAL BANK, IN CHICAGO, ILLINOIS, President and Board of Directors; NORWEST BANK IN MINNEAPOLIS, MINNESOTA, President and Board of Directors, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Pending before the Court are the following motions:

1. Motion to Dismiss by Defendant Wells Fargo Bank [doc. #42];

2. Motion to Dismiss by Defendant LaSalle Bank National Association [doc. #46];

3. Motion to Hold Defendants in Contempt of Court by the Estate of Cheryl Montileaux (deceased), Charles T. Montileaux Sr., Naomi Montileaux, Charles T. Montileaux Jr., and Miriam Montileaux ("the Plaintiffs") [doc. #51];

4. Motion to Dismiss by Defendant Northern Trust Company [doc. #53];

5. "Joinder in Wells Fargo's Motion to Dismiss" by Defendant Farmers State Bank [doc. #59] ;[1]

6. Motion for Summary Judgment by the Plaintiffs [doc. #61]; and

7. Motion for Oral Argument on Motion for Summary Judgment by the Plaintiffs [doc. #63].

The Court has received responses to the various motions and now is prepared to rule.

## I. BACKGROUND

Charles T. Montileaux Sr. ("Mr. Montileaux") filed the Complaint in this matter on June 21, 2005.[2] The following rendition of the events surrounding the instant lawsuit were alleged by the Plaintiffs in their Complaint. The Plaintiffs allege they filed a medical malpractice suit against Illinois Masonic Medical Center and four doctors in the Northern District of Illinois on July 13, 1987. The Plaintiffs claim their attorney in that case called Mr. Montileaux on March 15, 1988, stating "they were negotiating with the four Doctors and the hospital and mentioned millions," but then the attorney called later and stated the case had settled for "half a million," presumably meaning dollars. According to the Plaintiffs, the attorney sent a release to Mr. Montileaux and his wife, Cheryl ("Mrs. Montileaux"), which they signed and sent back to the attorney. On March 6, 1988, the Plaintiffs allege, another Chicago attorney sent a letter and

---

[1] As noted in the caption on the Plaintiffs' Complaint, Farmers State Bank later became Norwest Bank, and Norwest Bank later became Wells Fargo Bank ("Wells Fargo"). Accordingly, the Court will grant the motion and permit the joinder (as it is likely Farmers State Bank does not even exist any longer as an entity separate from Wells Fargo) and will hereafter treat Farmers State Bank as a part of Wells Fargo for purposes of the instant motions.

[2] Mr. Montileaux appears to have signed all the documents filed with the Court with regard to this lawsuit. As more fully explained below, Mr. Montileaux is not permitted to represent parties other than himself in this case. Nevertheless, the Background section recites the allegations contained in the Complaint as if presented by all the Plaintiffs.

2

settlement drafts to Richard Nelson at Farmers State Bank in Winner. The Plaintiffs claim the attorney was led to believe the settlement would have to go through an estate proceeding in South Dakota by Episcopal church attorney Robert Maule ("Mr. Maule"). The Plaintiffs allege that, after Mrs. Montileaux passed away, on April 11, 1988, Mr. Maule had Mr. Montileaux sign papers in Winner without a proper explanation, and these papers allegedly were filed in the court in Winner. The Plaintiffs also allege that on April 14, 1988, someone at the Farmers State Bank forged settlement papers, settlement agreements, and settlement checks, at Mr. Maule's direction.

According to the Plaintiffs, the forged documents, including a $150,000 forged check, were sent to Northern Trust Company ("Northern Trust") in Chicago and, in return, a $149,965 cashier's check was sent to Farmers State Bank, reading, "Pay to the order of FARMERS STATE BANK, WINNER, SOUTH DAKOTA." This check, the Plaintiffs claim, was authorized by Wallace G. Kelley of Northern Trust. Then, the Plaintiffs claim, in April 1988, a forged $350,000 check was sent to LaSalle National Bank ("LaSalle") in Chicago and, on April 29, 1988, Farmers State Bank received $350,000 in funds wired through Norwest Bank in Minneapolis. The Plaintiffs assert that, on May 2, 1988, Farmers State Bank sent $134,000 to one of the above-mentioned Chicago attorneys and, on May 3, 1988, Mr. Montileaux was called into Farmers State Bank to sign a signature card for an account the bank opened on April 27. The bank's president, James Jares, it is alleged, later wrote that Mr. Montileaux opened the account, and Mr. Montileaux's May 3 signature card was back dated to April 27.

The Plaintiffs claim almost $300,000 sat in one account, although the FDIC only covers $100,000 in any single account. The Plaintiffs allege they suffered severe damages due to the criminal activity by the various Defendants as follows: 1) criminal activity by all the previously

3

mentioned FDIC banks prevents the Plaintiffs from knowing how the funds were handled prior to the funds being deposited in Farmers State Bank; 2) the Plaintiffs still do not have copies of the forged settlement documents and agreements, aside from the Northern Trust cashier's check, nor do they have copies of the forged $350,000 check; 3) due to the criminal conspiracy and activity by the FDIC banks and Mr. Maule, Mr. Montileaux was forced to leave the Episcopal ministry, thereby losing a career and retirement benefits; and 4) federal authorities, including an Assistant United States Attorney and an FBI agent, were notified of this criminal activity, but no action was taken. The Plaintiffs seek $50 million in damages from the FDIC and the United States for damages suffered as a result of the Defendants' negligence and criminal activity.

On October 5, 2005, the Court granted a motion by the United States to dismiss the Complaint. The United States moved to dismiss for failure to state a claim upon which relief can be granted, for failure to exhaust administrative remedies, and for violating the statute of limitations. The Court granted the motion, concluding the Plaintiffs' cause of action was barred by the statute of limitations and the Plaintiffs failed to exhaust administrative remedies.

From September 19-23, 2005, Wells Fargo, LaSalle, and Northern Trust filed the instant motions, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Wells Fargo and LaSalle brought their respective motions pursuant to Rule 12(b)(6), arguing the Plaintiffs failed to file their Complaint within the applicable statute of limitations and that the Complaint alleges offenses for which the Plaintiffs maintain no authority to raise. Northern Trust presents the same arguments, and also argues the Court should dismiss the case against it, under Rule 12(b)(2), because the Court maintains no personal jurisdiction over it.

## II. DISCUSSION

The Defendants move to dismiss the Complaint, pursuant to Rule 12(b)(6), on the ground that the Complaint fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A complaint must not be dismissed under 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief.'" Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 613 (8th Cir. 2003) (quoting Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999)). "[W]e accept the complaint's factual allegations as true and construe them in a light most favorable to the plaintiff." Id. (citation omitted). The Eighth Circuit has emphasized that

> [a] complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997).

### A.   Statute of Limitations

#### 1.   Mr. Montileaux

The Defendants first argue the Complaint should be dismissed because it deals with acts that occurred between March 15, 1988, and April 27, 1988, and the Complaint was not filed until June 21, 2005, over seventeen years later. "[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (quoting Wycoff v. Menke, 773 F.2d 983, 984-85 (8th Cir. 1985)).

Specifically, the Defendants contend the Plaintiffs' claims are outside any even arguably applicable statute of limitations. As the Defendants note, it is difficult to discern from the Complaint what causes of action they assert. "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted). Liberally construing the Complaint, based on the statements therein, the Court concludes the Plaintiffs seek to bring claims for fraud, or for negligence, or both. Under South Dakota law, a fraud claim is governed by a six-year statute of limitations, and negligence claims are governed by a three-year statute of limitations. S.D.C.L. § 15-2-13; S.D.C.L. § 15-2-14; Rehm v. Lenz, 547 N.W.2d 560, 565 (S.D. 1996).

Regardless of which limitation period applies, Mr. Montileaux cannot show he presented his claims within those periods.[3] The Complaint deals with acts that occurred in 1988, seventeen years before Mr. Montileaux filed the Complaint. Even giving the Complaint a liberal construction, nothing therein provides any reason the limitations periods would have been tolled, with respect to Mr. Montileaux's claims, for a minimum of over eleven years. Thus, Mr. Montileaux's claims will be dismissed for failure to state a claim for which relief can be granted.

2. **Naomi Montileaux, Charles T. Montileaux Jr., Miriam Montileaux, and the Estate of Cheryl Montileaux**

With regard to Plaintiffs Naomi Montileaux ("Naomi"), Charles T. Montileaux Jr. ("Charles Jr."), and Miriam Montileaux ("Miriam"), the pleadings in this case do not indicate the ages of these Plaintiffs and whether the tolling provisions of the South Dakota statutes apply to

---

[3]It is also unlikely the Estate of Cheryl Montileaux would be able to show its claims were brought before the statutes of limitations expired. However, as noted below, the Estate's claims are not properly before the Court, and the Court makes no ruling as to their timeliness.

them. Nor do the pleadings indicate explicitly whether these Plaintiffs are the children of Mr. Montileaux and his deceased wife.

Under South Dakota law, "[i]f a person entitled to bring an action . . . was at the time the cause of action accrued . . . [w]ithin the age of minority . . . the time of the person's disability is not a part of the time limited for the commencement of the action." S.D.C.L. § 15-2-22. However, "[t]he period within which the action shall be brought cannot be . . . extended in any case longer than one year after the disability ceases." Id. Minors are natural persons under eighteen years of age, so this "disability" ceases when minors reach that age. See S.D.C.L. §§ 26-1-1; 15-2-22. If indeed Naomi, Charles Jr., and Miriam are the children of Mr. Montileaux and his deceased wife (who passed away in March or April of 1988), these children are near or over the age of eighteen. To the extent any of these individuals are over nineteen years old, their claims also would be time barred, requiring dismissal. However, even if the Court were able to decide this issue based on the pleadings, the Court must refrain from doing so, because these individuals' claims are not properly before the Court, as explained below.

Mr. Montileaux, as a non-lawyer, may not represent these individuals. While federal law provides that "parties may plead and conduct their own cases personally," 28 U.S.C. § 1654, this right does not extend to representation of one's child. See, e.g., Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882-83 (3d Cir. 1991) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child."); Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir. 1986) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."); see also Lawson v. Edwardsburg Pub. Sch., 751 F. Supp. 1257, 1258 (W.D. Mich.

7

1990) ("While a litigant has the right to act as his or her own counsel, see 28 U.S.C. § 1654, a non-attorney parent is not permitted to represent the interests of his or her minor child."). Moreover, Mr. Montileaux may not represent the Estate of his deceased wife. See Jones v. Corr. Med. Servs., Inc., 401 F.3d 950, 951-52 (8th Cir. 2005) (interpreting section 1654 as prohibiting non-attorney administrator of an estate from proceeding pro se when there exist other beneficiaries or creditors of the estate). Accordingly, the Court will dismiss without prejudice the claims purportedly brought on behalf of Naomi Montileaux, Charles T. Montileaux Jr., and Miriam Montileaux, as well as the claims purportedly brought on behalf of the Estate of Cheryl Montileaux. See Lawson, 751 F. Supp. at 1258.

**B.      Criminal Claims**

Alternatively, the Defendants argue the Complaint should be dismissed because it presents criminal complaints against them, and the Plaintiffs have no authority to bring criminal claims against the Defendants. Indeed, the Eighth Circuit has instructed that "government prosecutors [] have the sole power and responsibility to institute criminal proceedings." United States v. Johnson, 861 F.2d 510 (8th Cir. 1988) (citation omitted). The Complaint states federal authorities were notified of the criminal activity that allegedly occurred, but these authorities took no action. The Complaint does not show any of the Plaintiffs have been given authority to prosecute criminal cases on behalf of any governmental entity. To the extent the Complaint seeks to bring criminal claims or charges against the Defendants, these claims also must be dismissed for failure to state a claim for which relief may be granted.

C.  **Jurisdiction Over Northern Trust Company**

Finally, Defendant Northern Trust Company also asserts it should be dismissed from this case, under Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. Northern Trust cites Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003), where the Eighth Circuit observed as follows:

> Due process requires that there be sufficient minimum contacts between the nonresident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. Sufficient minimum contacts exist when the defendant's conduct and connection with the forum state are such that he [or she] should reasonably anticipate being haled into court there. In assessing the defendant's reasonable anticipation, it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

(internal citations and quotations omitted). In this case, Northern Trust asserts it maintains no office in South Dakota, has no employees in South Dakota, and has not availed itself of the privilege of conducting business in South Dakota. Nothing before the Court, and nothing in the Plaintiffs' submissions, indicate Northern Trust has any connection to the State of South Dakota. Northern Trust would not "reasonably anticipate being haled into court" here. Accordingly, the Court will also grant Northern Trust's motion to dismiss under Rule 12(b)(2).

D.  **Plaintiffs' Motion to Hold Defendants in Contempt**

The Court is unable to ascertain exactly what is at issue in the Plaintiffs' motion to hold the Defendants in contempt. The motion states the Defendants "have not responded in a timely manner to the Court's order issued to them and which they have received." The motion claims the Defendants have had ample time to respond but have chosen not to do so. Construing the Plaintiffs' pro se filings liberally, Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853

9

(8th Cir. 2003), the Court concludes the Plaintiffs' motion seeks to have the Defendants answer or otherwise respond to the Complaint, as the Court previously ordered the Defendants "to timely serve and file an answer or responsive pleading to the complaint, together with a legal brief or memorandum in support thereof." See doc. #5. The Defendants filed motions to dismiss shortly after being served with copies of the Complaint and the Court's order to respond thereto. The Plaintiffs have not demonstrated any contumacious conduct by the Defendants that would warrant contempt sanctions against them. The Court will deny the Plaintiffs' motion.

E.     **Plaintiffs' Motion for Summary Judgment**

The Plaintiffs filed a motion for summary judgment, wherein they state "[i]t is very clear to plaintiffs that the law is on their side concerning this complaint and lawsuit," and "[i]f this proceeds to trial, it is clear that the plaintiffs will win this case." The Plaintiffs' motion suffers from a number of deficiencies under the Court's local rules and the Federal Rules of Civil Procedure. Regardless of these technical inadequacies, however, the Court concludes the motion is moot because the motions to dismiss are granted. Thus, the motion for summary judgment and motion for oral argument on the summary judgment motion will be denied.

### III. CONCLUSION

Mr. Montileaux's claims, brought seventeen years after the actions allegedly forming the basis for the Complaint, are barred by any arguably applicable statute of limitations. While the claims by the children and the Estate also may be barred, such claims are not properly before the Court because Mr. Montileaux may not bring claims on their behalf. The Court will dismiss the claims by the children and the Estate without prejudice. The Plaintiffs have no authority to bring criminal charges against the Defendants. The Court lacks personal jurisdiction over Defendant

Northern Trust Company.  Thus, the Defendants' motions to dismiss must be granted.  Furthermore, the Plaintiffs have provided no basis upon which the Court could hold the Defendants in contempt.  Finally, the Court finds no basis for the Plaintiffs' motion for summary judgment.  Accordingly, it is hereby

ORDERED that Wells Fargo Bank's Motion to Dismiss [doc. #42], LaSalle Bank National Association's Motion to Dismiss [doc. #46], and Northern Trust Company's Motion to Dismiss [doc. #53] are GRANTED.  The claims presented by Charles T. Montileaux Sr. are dismissed with prejudice.  The purported claims brought on behalf of Naomi Montileaux, Charles T. Montileaux Jr., and Miriam Montileaux, as well as the purported claims brought on behalf of the Estate of Cheryl Montileaux are dismissed without prejudice;

IT IS FURTHER ORDERED that the Plaintiffs' Motion to Hold Defendants in Contempt of Court [doc. #51] is DENIED;

IT IS FURTHER ORDERED that Farmers State Bank's Joinder in Wells Fargo's Motion to Dismiss [doc. #59] is GRANTED;

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Summary Judgment [doc. #61] is DENIED; and

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Oral Argument on Motion for Summary Judgment [doc. #63] is DENIED.

Dated this 16th day of November, 2005.

BY THE COURT:

_____
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE